UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MICKEL G. HOBACK | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:10-CV-74 |
| v. | ) |
| | ) Chief Judge Curtis L. Collier |
| CITY OF CHATTANOOGA | ) |
| | ) |
| Defendant. | ) |

**M E M O R A N D U M**

Before the Court are several dispositive motions: a motion for summary judgment filed by Plaintiff Mickel G. Hoback ("Hoback") (Court File No. 25), a supplemental motion for summary judgment filed by Hoback (Court File No. 31), and a motion for partial summary judgment filed by Defendant the City of Chattanooga ("the City") (Court File No. 29). For the following reasons, the Court will **DENY** Hoback's motion for summary judgment (Court File No. 25), **DENY** Hoback's supplemental motion for summary judgment (Court File No. 31), and **GRANT** the City's motion for partial summary judgment (Court File No. 29).

**I. RELEVANT FACTS**

Hoback was hired as a police officer by the Chattanooga Police Department ("CPD") on July 21, 2000. In 2002, Hoback took a brief leave from the CPD to enter basic training for the United States Army. Following basic training, Hoback returned to the CPD until June 22, 2004, when his National Guard unit was activated and deployed to Iraq. Hoback served in Iraq until being honorably discharged on November 27, 2005. In February 2006 Hoback resumed his duties as a CPD police officer.

At some point after returning from Iraq, Hoback was diagnosed with Post-Traumatic Stress Disorder ("PTSD"). Hoback received counseling and treatment, including psychotropic medication, from the Veterans Administration ("VA"). On April 13, 2009, Hoback met with Dr. Estella Acosta of the VA. During the course of the meeting, Dr. Acosta became concerned that Hoback was suicidal and dangerous. She filled out a Certificate of Need for Involuntary Commitment, which stated Hoback was "depressed and despondent and states that he is feeling suicidal," and further said "[Hoback] indicated using a gun although he stated he does not own a gun." Hoback was not involuntarily committed, however; apparently he slipped out the back door of the clinic while Dr. Acosta was making arrangements for his committal.

After leaving the VA clinic, Hoback drove himself to the VA hospital in Murfreesboro, Tennessee and checked himself in. He was kept overnight, and released the next day. The CPD became aware of the attempted involuntary commitment of Hoback on April 14, 2009. On that date, the Bradley County Sheriff's Department called CPD to inform CPD it was attempting to serve emergency committal papers on Hoback, and to ask CPD's help in locating Hoback. After some investigation, CPD discovered Hoback had already checked himself into the VA hospital. Also on April 14, 2009, Freeman Cooper, CPD Chief of Police, wrote a letter relieving Hoback from duty, and placing him on administrative leave. The letter further stated Hoback would be required to complete a "fitness for duty" psychological examination.

In April and May 2009, Donald L. Brookshire, Psy.D., met with Hoback several times to conduct the fitness for duty psychological examination. In a seven-page, single-spaced report, Dr. Brookshire concluded Hoback was "not psychologically fit to safely perform the duties as a police officer." Following this evaluation, Hoback was told he needed to either apply for another position

2

with the City, or file for Family Medical Leave Act ("FMLA") benefits.[1] Hoback did neither. Subsequently, Hoback requested a second evaluation be performed by another psychologist. In June and July 2009, Hoback was evaluated by Terrell M. McDaniel, Ph.D. Dr. McDaniel's report, while acknowledging Dr. Brookshire's conclusion may have been justified at the time, concluded Hoback was now fit for duty as a police officer. However, the report advised that "adequately monitoring Mr. Hoback's behavior and mental health status will be essential but difficult," and recommended he be placed in "a position that provides acceptable levels of monitoring at the beginning of his re-engagement," and continue receiving intensive counseling and psychological monitoring for at least 90 days.

On July 21, 2009, after Hoback had exhausting all of his personal leave time, Chief Freeman terminated Hoback's employment with the CPD based on Dr. Brookshire's determination Hoback was not fit for duty. Chief Freeman did not significantly rely upon Dr. McDaniels' report, because he viewed its conditions regarding the need to continue actively monitoring Hoback as belying the formal conclusion that Hoback was now fit for duty. Following his termination, Hoback exercised his right to appeal to a panel of the Chattanooga City Council. After a hearing on November 9, 2009, his termination was upheld by a 2-1 vote. Hoback then filed this lawsuit.

## II.   STANDARD OF REVIEW

Summary judgment is proper if the movant shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[1] The City's brief claims Hoback was told he could apply for other positions with the City. Hoback's briefs are silent on this point.

3

of law." Fed. R. Civ. P. 56(a). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Should the non-movant fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. ANALYSIS

Hoback claims his termination by the City was in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 791 *et seq.*, and the Uniform Services Employment and

4

Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301 *et seq*. He has moved for summary judgment on all claims. He has also filed a supplemental motion for summary judgment, asking the Court to find his psychological examination by Dr. Brookshire was not "job-related and consistent with business necessity." The City has moved for partial summary judgment, seeking a favorable disposition only on the USERRA claim. The Court will address each of Hoback's three claims in turn.

### A. ADA Claim

Hoback moves for summary judgment on the claim his termination by the City violated the ADA. The ADA states an employer may not "discriminate against a qualified individual with a disability." 42 U.S.C. § 12112(a). A "qualified" individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of [the] employment position." 42 U.S.C. § 12111(8). Reasonable accommodations include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations." 42 U.S.C. § 12111(9)(B). "Discrimination" includes an employer's "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A); *see also U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 396 (2002). When, as here, an ADA plaintiff premises his claim upon direct evidence, the following framework applies:

> (1) The plaintiff bears the burden of establishing that he or she is disabled.
> (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability:
>  (a) without accommodation from the employer;
>  (b) with an alleged "essential" job requirement eliminated; or
>  (c) with a proposed reasonable accommodation.

5

> (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer

*Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 869 (6th Cir. 2007) (citation omitted).

Here, Hoback claims the City discriminated against him on account of his PTSD by not allowing him to continue working in his same position, or, alternatively, reasonably accommodating his PTSD. In arguing for summary judgment, Hoback necessarily takes the position there are no genuine issues of material fact as to any element of the ADA claim. The Court disagrees.

The City does not contest Hoback's PTSD was a "disability" within the meaning of the ADA, so the Court will take this element as established for purposes of the present motion. However, there are significant, genuine issues of material fact regarding whether Hoback was "otherwise qualified" for a police officer position which preclude summary judgment. Hoback argues he was uncontestedly "otherwise qualified" to continue working as a police officer, despite his PTSD. Hoback cites Dr. McDaniels' opinion he was fit for duty, and also argues the symptoms of his PTSD were wholly irrelevant to his job performance, since they only were evident in the context of counseling sessions, not while he was working. Alternatively, Hoback argues he could have performed his job with unspecified "reasonable accommodations," which he was allegedly not offered.

However, the conclusion Hoback was "otherwise qualified" to continue as a police officer is plainly based on contestable factual premises, among them: that Dr. Brookshire's psychological evaluation was unreliable, that Dr. McDaniels' evaluation was more reliable, that PTSD manifesting itself in suicidal ideation and contemplated gun use bears no relevance to any "essential job functions" of a police officer, and that, even if the PTSD did impede essential job functions, Hoback

6

could have performed if offered "reasonable accommodations." Construing the facts most favorably to the City, as the Court must, the Court concludes a reasonable fact-finder would not be bound to find the City violated the ADA in terminating Hoback. Accordingly, summary judgment for Hoback is improper on this claim.[2]

### B. Rehabilitation Act Claim

Hoback moves for summary judgment on the claim his termination violated the Rehabilitation Act. The standards for proving a claim under the Rehabilitation act are essentially the same as under the ADA. *See Doe v. Salvation Army*, 531 F.3d 355, 357 (6th Cir. 2008) ("We review claims brought under the Rehabilitation Act as we would claims brought under the Americans with Disabilities Act."); *see also* 29 U.S.C. § 794(d) ("The standards used to determine whether [the Rehabilitation Act] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act."). Just as genuine issues of material fact regarding whether Hoback was "otherwise qualified" for his position preclude summary judgment on the ADA claim, so these issues preclude summary judgment on the Rehabilitation Act claims.

### C. USERRA Claim

Hoback moves for summary judgment on the claim his termination violated the USERRA. The City also moves for summary judgment on this claim. The USERRA prohibits adverse

---

[2]In Hoback's supplemental motion for summary judgment, he asks the Court to find the psychological examination performed by Dr. Brookshire was not "job-related and consistent with business necessity." *See* 42 U.S.C. § 12112(d)(4)(A). It is unclear from Hoback's brief what relation this issue bears to the ultimate issue of whether Hoback's termination was in violation of the ADA. At any rate, because summary judgment on the ultimate issue is improper, as explained above, the Court will abstain from ruling on this ancillary issue, and will thus deny Hoback's supplemental motion for summary judgment.

7

employment actions in which the employee's membership in the uniformed services is a "motivating factor" in the employer's action, unless the employer can show such action would have been taken regardless of such membership. *See* 38 U.S.C. § 4311(c). "The plaintiff may prove the factual question of discriminatory motivation by direct or circumstantial evidence." *Hance v. Norfolk S. Ry.*, 571 F.3d 511, 518 (6th Cir. 2009). If there is no direct evidence, the plaintiff must present circumstantial evidence tending to show discriminatory intent:

> Discriminatory motivation under the USERRA may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Id.* (quotation omitted). After the plaintiff makes this showing, the burden "shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action." *Id.* (quotation omitted).

Here, however the facts are construed, Hoback has not made a plausible showing he was discriminated against because of his service in the Army.[3] Hoback was promptly re-employed upon his return from Iraq, and remained employed by the CPD for the next four years. *See* 38 U.S.C. § 4316(c)(1) (prohibiting an employer, who re-employs a service member who worked for the employer for more than 180 days before his service-related absence, from terminating that employee for at least one year, except for cause); *see also* 38 U.S.C. § 4312(e)(2)(A) (providing a maximum two-year convalescence period for military service-related injuries during which time a service member is entitled to reemployment rights). There is absolutely nothing in the record suggesting

---

[3] Hoback allots only a paragraph of his motion for summary judgment to the USERRA claim.

8

Case 1:10-cv-00074-CLC-SKL   Document 46   Filed 08/04/11   Page 8 of 9   PageID #: 1045

Hoback was terminated because of four-years-dormant animus towards his military service, rather than the fitness for duty examination in which he was found no longer qualified to perform as a police officer. Neither is there circumstantial evidence pointing to any animus by the City towards veterans. In fact, it is undisputed that approximately 12.5% of the CPD's officers are current or former members of the military. *See Becker v. Dep't of Veterans Affairs*, 414 F. App'x 274, 277 (Fed. Cir. 2011) (finding a prospective employer's interviewing of other veterans implies the plaintiff's military service was not a motivating factor in the employer's decision not to interview the plaintiff). Because there is no evidence, either direct or circumstantial, suggesting Hoback's military service was a "motivating factor" in the City's decision to terminate him, the City is entitled to summary judgment on Hoback's USERRA claim.

## IV.   CONCLUSION

For the reasons stated above, the Court will **DENY** Hoback's motion for summary judgment (Court File No. 25), **DENY** Hoback's supplemental motion for summary judgment (Court File No. 31), and **GRANT** the City's motion for partial summary judgment (Court File No. 29). Hoback's ADA and Rehabilitation Act claims will proceed to trial.

**An order shall enter.**

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

9